[COMMENT1] 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-399-CR

 

 

KENT EDWARD WINGFIELD                                                   APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 30TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  Introduction

In two issues, Appellant Kent Edward Wingfield
appeals his convictions for burglary of a habitation and aggravated
assault.  We affirm.

                          II.  Factual and Procedural Background








On April 24, 2005, Nerelyne Pope, accompanied by
Tony Russell, returned home to find that her house had been broken into.  When Pope entered her house, she saw
Wingfield, an acquaintance, coming out of a back room.  Pope asked Wingfield to leave but he refused.

An argument ensued between Wingfield and
Russell.  Russell told Wingfield he
needed to leave, and Wingfield responded by punching Russell in the mouth.  When Russell threatened to call the police,
Wingfield ran towards the kitchen. 
Scared, both Russell and Pope left the house.  At some point, Wingfield began to chase after
Russell with a knife he had taken from Pope=s
kitchen.  Russell testified at trial that
Wingfield said he was going to kill him just before he stabbed Russell five
times.

The police apprehended Wingfield and charged him
with burglary of a habitation and aggravated assault.  A jury convicted Wingfield on both counts,
and the judge sentenced him to ten years= confinement
for the burglary charge and ninety years=
confinement for the aggravated assault charge. 
This appeal followed.

                                      III.  Double Jeopardy








In his first issue, Wingfield complains that his
Fifth Amendment right to be free from double jeopardy was violated when the
trial court denied his request to dismiss the charge of aggravated assault and
he was convicted of both aggravated assault and burglary.  The essence of his argument is that (1) the
evidence was legally insufficient to show that there were two assaults: one
inside the house (punching) and one outside the house (stabbing); (2) the
evidence to support the punching assault was legally insufficient in that
Russell did not directly testify that he experienced pain from Wingfield=s punch;
and (3) since Russell did not experience pain, there was no punching assault,
so the jury could have only found that the stabbing assault occurred; and (4)
double jeopardy was violated by the application of the same assault to create
two offenses, resulting in multiple punishments.  See U.S. Const. amend. V; Brown v.
Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Ex parte Herron,
790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh=g).

A.  Legal
Sufficiency

1. 
Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the responsibility
of the trier of fact to resolve conflicts in the testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate
facts.  Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

2. 
Applicable Law








Burglary of a habitation occurs when a person,
without effective consent of the owner, enters a habitation and commits or
attempts to commit an assault.  Tex.
Penal Code Ann. ' 30.02(a)(3) (Vernon 2003).  A person commits an assault Aif the
person intentionally, knowingly, or recklessly causes bodily injury to another.@  Id. '
22.01(a)(1) (Vernon Supp. 2008).  Bodily
injury is defined as Aphysical pain, illness, or any
impairment of physical condition.@  Id. '
1.07(a)(8) (Vernon Supp. 2008).  The
Texas Court of Criminal Appeals has broadly interpreted the definition of
bodily injury to include Aeven relatively minor physical
contacts so long as they constitute more than mere offensive touching.@  Lane v. State, 763 S.W.2d 785, 786
(Tex. Crim. App. 1989).

A jury may infer that a victim actually felt or
suffered physical pain because people of common intelligence understand pain
and some of the natural causes of it.  Randolph
v. State, 152 S.W.3d 764, 774 (Tex. App.CDallas
2004, no pet.).  When considering whether
evidence is sufficient to establish that a victim suffered pain, juries may use
common sense and apply common knowledge, observation, and experience gained in
the ordinary affairs of life, using inferences that may reasonably be drawn
from evidence.  Wawrykow v. State,
866 S.W.2d 87, 88B89 (Tex. App.CBeaumont
1993, pet. ref=d) (finding that a rational jury
could have inferred that pushes to the chest caused Aphysical
pain@); see
also Goodin v. State, 750 S.W.2d 857, 859 (Tex. App.CCorpus
Christi 1988, pet. ref=d) (stating that people of
common intelligence understand what naturally causes physical pain).

The Double Jeopardy Clause of the United States
Constitution provides that no person shall be subjected to twice having life or
limb in jeopardy for the same offense. 
U.S. Const. amend. V.








3. 
Analysis 

Here, both Russell and Pope testified that while
they were standing inside the house, Wingfield punched Russell in the
mouth.  Although Russell did not
affirmatively testify to any pain, the State entered into evidence a picture of
Russell=s mouth
showing a laceration on his lower lip. 
Furthermore, Russell=s
medical records, also entered into evidence, stated that the laceration
required sutures.  After taking all the
evidence into consideration, the jury could have reasonably inferred that
Russell suffered pain as a result of Wingfield punching him in the mouth.  We therefore conclude that the evidence is
legally sufficient to support Wingfield=s
conviction for burglary of a habitation.

Because the evidence is sufficient to support a
finding that an assault occurred inside the houseCi.e. Wingfield
punching Russell in the mouthCand
because Wingfield does not challenge the assault that occurred outside the
houseCi.e.
Wingfield stabbing Russell five timesCwe
conclude that the two assaults support Wingfield=s
convictions for burglary of a habitation and aggravated assault, and that
Wingfield=s right to be free from double
jeopardy was not violated.  Accordingly,
we overrule Wingfield=s first issue.

                                       IV.  Jury Instruction








In his second issue, Wingfield argues that the
trial court erred by refusing to instruct the jury on the lesser included
offense of assault with regard to the aggravated assault charge in the
indictment.  He contends that the State
did not prove beyond a reasonable doubt that the knife he used to wound Russell
was a deadly weapon and that the jury could have interpreted that the knife was
not a deadly weapon.

A.  Lesser Included Offense

1. 
Standard of Review

We use a two-step analysis to determine whether
an appellant was entitled to a lesser included offense instruction.  Hall v. State, 225 S.W.3d 524, 528
(Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d 666, 672B73 (Tex.
Crim. App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
2006); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).








AAn offense is a lesser included
offense if . . . it is established by proof of the same or less than all the
facts required to establish the commission of the offense charged.@  Tex. Code Crim. Proc. Ann. art. 37.09(1); see
also Hall, 225 S.W.3d at 536.  This
inquiry is a question of law.  Hall,
225 S.W.3d at 535.  It does not depend on
the evidence to be produced at the trial but is performed by comparing the
elements of the offense as they are alleged in the indictment or information
with the elements of the potential lesser included offense.  Id. at 525, 535B36.

Second, some evidence must exist in the record
that would permit a jury to rationally find that if the appellant is guilty, he
is guilty only of the lesser offense.  Hall,
225 S.W.3d at 536; Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim.
App. 2005); Rousseau, 855 S.W.2d at 672B73.  The evidence must be evaluated in the context
of the entire record.  Moore, 969
S.W.2d at 8.  There must be some evidence
from which a rational jury could acquit the appellant of the greater offense
while convicting him of the lesser included offense.  Id. 
The court may not consider whether the evidence is credible,
controverted, or in conflict with other evidence.  Id. 
Anything more than a scintilla of evidence may be sufficient to entitle
a defendant to a lesser charge.  Hall,
225 S.W.3d at 536.

2. 
Applicable Law








Because the State concedes that assault is a
lesser included offense of aggravated assault with a deadly weapon, our sole
inquiry is to determine if some evidence exists that would permit a jury to
rationally find Wingfield guilty only of the lesser offense of assault.  See Rousseau, 855 S.W.2d at 672B73.  A lesser included offense instruction was
required if the record contains some evidence that Wingfield did not use or
exhibit a deadly weapon.  Moreno v.
State, 38 S.W.3d 774, 778 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).

Section 22.01 of the penal code states that a
person commits assault if he Aintentionally,
knowingly, or recklessly causes bodily injury to another.@  Tex. Penal Code Ann. '
22.01(a)(1).  A person commits the
offense of aggravated assault if he intentionally, knowingly, or recklessly
causes bodily injury to another and Auses or
exhibits a deadly weapon during the commission of the assault.@  Id. '
22.02(a)(2).  A deadly weapon is Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@ 
Id. ' 1.07(a)(17)(B); Gordon v.
State, 173 S.W.3d 870, 873 (Tex. App.CFort
Worth 2005, no pet.); Dotson v. State, 146 S.W.3d 285, 299 (Tex. App.CFort
Worth 2004, pet. ref=d).








Although a knife is not a deadly weapon per se,
the court of criminal appeals has held that an object, such as a knife, can be
a deadly weapon if the actor intends to use the object in a way in which it
would be capable of causing death or serious bodily injury.  McCain v. State, 22 S.W.3d 497, 502B03 (Tex.
Crim. App. 2000); Russell v. State, 804 S.W.2d 287, 290 (Tex. App.CFort
Worth 1991, no pet.).  Serious bodily
injury means bodily injury that creates a substantial risk of death or that
causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ. Tex. Penal Code Ann. '
1.07(a)(46).  Factors considered in
determining whether a knife is capable of causing death or serious bodily
injury include the physical proximity of the parties, the threats or words used
by the defendant, the size, shape, and sharpness of the weapon, the manner in
which the defendant used the weapon, and the wounds inflicted on the
victim.  Brown v. State, 716
S.W.2d 939, 946 (Tex. Crim. App. 1986); Bailey v. State, 46 S.W.3d 487,
491B92 (Tex.
App.CCorpus
Christi 2001, pet. ref=d); Garcia v. State, 17
S.W.3d 1, 4B5 (Tex. App.CHouston
[1st Dist.] 1999, pet. ref=d).

3. 
Analysis

According to Wingfield, due to the size, shape,
and intended use of the knife in this case, its Acharacter
as a deadly weapon is subject to different interpretations.@  And, because the knife=s
character is subject to different interpretations, the trial court erred when
it refused to give the jury an instruction for the lesser included offense of assault.  However, the record is devoid of evidence
that would support Wingfield=s Ainterpretation@ theory,
and he has failed to direct us to any in his brief.








The State, on the other hand, presented evidence
to support the jury=s finding that the knife in
question is a deadly weapon. 
Specifically, the State elicited evidence through Russell=s
testimony that Wingfield stated he was going to kill him, that Wingfield chased
him down, and that Wingfield stabbed him five times.  Officer Ryan Piper of the Wichita Falls
Police Department, testified that, based on his experience, the fourBinch
bladed knife, as conceded by Wingfield, would be considered a deadly weapon if
used to stab a person in the head or body. 
The evidence showed that Russell had been stabbed once in the head, once
in the neck, and three times in the back. 
Furthermore, there was evidence that one of the wounds resulted in a
punctured lung that required a chest tube and a stay of about four days in the
hospital.

After taking all of the evidence into consideration
and using the factors from Brown as our guide, we hold that the evidence
is legally sufficient to support the jury=s
finding that Wingfield=s knife constituted a deadly weapon.  See Brown, 716 S.W.2d at 94.  Therefore, a jury instruction on the lesser
included offense was not warranted because there was no evidence presented at
trial that could permit a rational jury to find that Wingfield committed only
simple assault on the basis that the knife used was not a deadly weapon.  See Moore, 969 S.W.2d at 8.  Accordingly, we overrule Wingfield=s second
issue.

                                          V.  Conclusion

Having overruled Wingfield=s two
issues, we affirm the trial court=s
judgment.

BOB
MCCOY

JUSTICE

 

PANEL: LIVINGSTON,
DAUPHINOT, and MCCOY, JJ.








DAUPHINOT, J. filed a
dissenting opinion.

 

PUBLISH

 

DELIVERED: January 22,
2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

                                        NO.
2-07-399-CR

 

 

KENT
EDWARD WINGFIELD                                                   APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 30TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------

 

The first count of both the indictment and the
jury charge describe burglary as entry into a habitation without the consent of
the owner, Nerelyne Pope, and committing or attempting to commit assault of an
unnamed person.  The majority concludes
that the evidence shows that Appellant assaulted Tony Russell by hitting him in
the mouth after entering the house while Pope was away.








The second count of the indictment and the second
count of the jury charge describe the aggravated assault of Tony Russell with a
deadly weapon in the same episode. 
Appellant argues that aggravated assault is a lesser included offense of
burglary as alleged in the indictment and that his convictions for both
burglary and aggravated assault violate double jeopardy protections.  This argument comports with his complaint at
trial.  The majority contends that
because the assault with bodily injury occurred inside the house and the
assault with the knife occurred after Appellant chased Russell outside the
house, they are two separate offenses, and there is, therefore, no double
jeopardy violation.  The record, however,
reflects a single, continuing assault.  The
unit of prosecution in a burglary offense is the entry, not the number of persons
assaulted.[1]  Two convictions will lie only if the
aggravated assault is not part of the assault alleged in the burglary count.

The record reflects that Appellant and Russell
were arguing and fighting in the front room of the house.  Appellant hit Russell in the face, and
Russell said he was going to call the police. 
Pope testified, AHe didn=t make
it over there in time to call the police.@  The prosecutor asked her what happened to
prevent Russell from calling the police, and she testified, A[Appellant]
ran him down and stabbed him.@








When asked for further explanation, Pope said
that when Russell said that he was calling 911, Appellant ran into the kitchen
to get a knife, and she and Appellant ran out the front door.  Pope ran to her car, and Russell ran toward
the next door neighbor=s house across a vacant
lot.  Appellant ran Russell down and
stabbed him with the knife that he had grabbed in Pope=s
kitchen.

The Texas Court of Criminal Appeals has discussed
stop-action prosecution in connection with sexual offenses against children,
explaining that there is nothing in the language of the various statutes
demonstrating that the legislature intended harsh penalties for sexual abuse of
children to suggest that it also intended to authorize Astop‑action@
prosecution:

Just as a conviction for
a completed offense bars prosecution for an attempt to commit the same offense,
a conviction for an offense set out in ' 3.03 bars conviction for conduct that, on
the facts of the case, is demonstrably part of the commission of the greater
offense.[2]

 








The record before us demonstrates that the
assault of Russell began inside the house and continued outside as Russell
attempted to run away from Appellant. 
The assault was part of the burglary offense.  Had the indictment charged Appellant with
burglary by entering the house and committing or attempting to commit sexual
assault of Pope, the State could have sustained its burden by showing the
sexual assault was begun inside the house and completed outside, whether on the
porch, or in her car, or in the yard next door.

Similarly, the assault of Russell was an
inextricable part of the burglary.  Just
as the State could not have convicted Appellant of assaulting Russell in the
back of the house and also in the front room (although the fight began in the
back of the house), the State cannot separate the composite parts of the
assault in order to secure a burglary conviction for the portion of the assault
that occurred inside the house and a separate aggravated assault conviction for
the final portion of the assault that was completed outside.

Because such stop-action prosecution permits
multiple punishments for both the greater offense of burglary and the lesser
included offense of assault, I would sustain Appellant=s double
jeopardy complaint.








When a defendant is convicted of two offenses
that are the Asame@ for
double‑jeopardy purposes, case law tells us that the conviction for the Amost
serious@ offense
is retained, and the other conviction is set aside.[3]  A[T]he >most
serious=
offenses is the offense . . . for which the greatest sentence was@
imposed.[4]  The trial court sentenced Appellant to ten
years= confinement
for the burglary of a habitation conviction and ninety years=
confinement for the aggravated assault with a deadly weapon conviction.  I would therefore retain the aggravated
assault conviction with the deadly weapon finding and set aside the burglary
conviction.  Because the majority upholds
both convictions, violating double jeopardy protections, I must respectfully
dissent.

 

LEE
ANN DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED: January 22, 2009











[1]Ex parte Cavazos, 203 S.W.3d 333, 337
(Tex. Crim. App. 2006).





[2]Patterson v. State, 152 S.W.3d 88, 92 (Tex.
Crim. App. 2004); see also Tex. Penal Code Ann. ' 3.03 (Vernon Supp.
2008).





[3]Cavazos, 203 S.W.3d at 337.





[4]Id.















 [COMMENT1]

majority by Justice McCoy

dissent by Justice Dauphinot